**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICARDO ANTHONY JEFFERIES, SR.,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:26-2435** |
| **v.** | : | **(JUDGE MANNION)** |
| **JOHN BEY, *et al.*,** | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Currently before the Court are *pro se* Plaintiff Ricardo Anthony Jefferies, Sr. ("Jefferies")'s application for leave to proceed *in forma pauperis* ("IFP Application") and complaint. For the reasons stated below, the Court will grant the IFP Application, dismiss Jefferies's complaint, and grant him leave to file an amended complaint as to some of his claims.

## I. BACKGROUND

Jefferies, a convicted and sentenced state prisoner currently incarcerated at Pennsylvania State Correctional Institution Phoenix, commenced this action by filing a complaint, which the Clerk of Court docketed on August 25, 2026. (Doc. 1.) When he filed his complaint, Jefferies neither paid the filing fee nor applied for leave to proceed *in forma pauperis*; as such, an Administrative Order issued requiring him to either remit the fee

or file an *in forma pauperis* application within thirty days. (Doc. 2.) Jefferies timely complied with the Administrative Order by filing his IFP Application and a certified copy of his prisoner trust fund account statement, both of which the Clerk of Court docketed on September 16, 2026. (Docs. 4, 5.)

As for Jefferies's complaint, he names as Defendants four individuals employed with Dauphin County: (1) John Bey, the Dauphin County Director of Corrections; (2) Warden Briggs, the warden of the Dauphin County Prison ("DCP"); (3) Adams, a DCP lieutenant; and (4) Joseph Hoose ("Hoose"), a DCP sergeant. *See* (Doc. 1 at 1). Jefferies alleges that he was confined at the DCP from approximately May 27, 2021, until May 24, 2024, as well as from approximately May 2025 to August 2025. *See* (*id.*)

Jefferies alleges that on or about January 29, 2024, he was suffering from a "mental health episode/crisis and was allegedly being non-compliant with orders given by" Adams, Hoose, and other DCP correctional officers. (*Id.* at 2.) During this "episode," Lewis "use[d] a palm thrust technique" on Jefferies's forehead while Jefferies was "strapped in a [r]estraint [c]hair that was utilized to control [his] actions." (*Id.*) In addition, while Jefferies was "sprawled out on the floor in a holding cell," Hoose, who weighs "well over 300 [pounds]," stood on Jefferies's ankle "in a wanton fashion," which caused "abrasions and bruises." (*Id.*) Jefferies asserts that DCP correctional officers

"are inadequately trained to deal with person having a [m]ental [h]ealth [c]risis." (*Id.*)

Following these events, Jefferies was charged with four counts of aggravated assault on DCP correctional officers and a member of the Dauphin County Sherriff's Department. *See* (*id.*). On June 26, 2025, Jefferies had a trial on these charges, but the trial ended in a mistrial. *See* (*id.*).

Jefferies alleges that on or about July 8, 2025, he previously commenced a civil action relating to the events of January 29, 2024, by filing a complaint and an application for leave to proceed *in forma pauperis* in the Court of Common Pleas of Dauphin County ("CCP"). *See* (*id.*). The next day, the CCP issued an Order stating that it would not "entertain[]" Jefferies's *in forma pauperis* application because he did not use the correct form when filing it, and the CCP directed the Prothonotary to enter a judgment of *non pros* if Jefferies did not file a new application within fourteen days. *See* (*id.*; Doc. 1-2 at 1); *see also* Docket, *Jefferies v. Bey*, No. 2025-cv-5149 (Dauphin Cnty. Ct. Com. Pl.) ("CCP Dkt.").[1] Jefferies then filed another *in forma*

[1] The Court takes judicial notice of the docket in Jefferies's civil case in the CCP, which is publicly available on Dauphin County's website (https://publicaccess.dauphincounty.gov/civil.casesearch/). *See In re Congoleum Corp.*, 426 F.3d 675, 679 (3d Cir. 2005) ("We take judicial notice of the state court proceedings insofar as they are relevant."); *Orabi v. Att'y Gen. of the U.S.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) (unpublished) ("We
*(footnote continued on next page)*

*pauperis* application along with a *nunc pro tunc* motion. *See* (Doc. 1 at 2); CCP Dkt. In the motion, Jefferies explained that he was delayed in filing a new *in forma pauperis* application in accordance with the CCP's Order because the Order was mailed to him at state prison even though he was currently confined at the DCP. *See* (Doc. 1 at 2); CCP Dkt.

On August 6, 2025, the CCP again refused to entertain Jefferies's *in forma pauperis* application because he did not use the proper form when submitting it. *See* (Doc. 1 at 2); CCP Dkt. The Court gave Jefferies another fourteen days to submit an application using the proper form. *See* CCP Dkt. Jefferies did not submit a new application, and the CCP entered a judgment of *non pros* on August 22, 2025. *See* (Doc. 1 at 2); CCP Dkt. Jefferies acknowledges that he never submitted a new application; however, he alleges that he never received a proper form and did not receive information (presumably about the status of his case) until approximately June 25, 2026. *See* (Doc. 1 at 2–3).[2] Jeffries states that he "still wishes to pursue [his

---

may take judicial notice of the contents of another Court's docket."); *Wilson v. McVey*, 579 F. Supp. 2d 685, 688 n.5 (M.D. Pa. 2008) (taking judicial notice of court docket). Jefferies attaches a copy of some of the docket entries to his complaint. *See* (Doc. 1-1 at 3).

[2] Although not referenced in Jefferies's complaint, it appears that he filed a motion seeking relief from the CCP's judgment of *non pros*, which was docketed in the CCP on August 4, 2026. *See* CCP Dkt. On August 12, 2026,

*(footnote continued on next page)*

o]riginal [c]laim as the [d]ue [p]rocess (Sixth Amendment) delays were not" caused by him. (*Id.* at 3.) Jefferies also "wishes" for "a new complaint form, a declaration in support of motion to proceed *in forma pauperis*, a motion to alter or amend judgment, memorandum of law forms, . . . a motion for Rule 59(e), . . . an amended complaint form, and, if necessary, a summons form." (*Id.* (cleaned up)). He also requests appointment of counsel. (*Id.*)

Based on the above allegations, Jefferies appears to assert official- and individual-capacity claims under 42 U.S.C. § 1983 for excessive force and deliberate in difference in violation of the Eighth Amendment to the United States Constitution, retaliation in violation of the First Amendment, and Fourteenth Amendment due process violations. *See* (*id.*).[3] He also appears to assert similar claims under the Pennsylvania Constitution. *See* (*id.*). For relief, Jefferies seeks a declaration that Defendants violated his rights as well as nominal, compensatory, and punitive damages. *See* (*id.*).

---

the CCP issued an Order denying Jefferies's motion and indicating that he needed to commence a new action if he "desire[s] to proceed." *Id.*

[3] Jefferies appears to claim that his due process claims fall under the Sixth Amendment, *see* (*id.*); however, considering that the Sixth Amendment does not reference due process, the Court construes Jefferies's due process claims as falling under the Fourteenth Amendment.

## II. LEGAL STANDARDS

### A. Applications for Leave to Proceed *in Forma Pauperis*

Under 28 U.S.C. §1915(a)(1), a district court "may authorize the commencement . . . of any [civil] suit, . . . without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[4] *Id.* This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation. [*Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995)]. Toward this end, §1915(a) allows a litigant to commence a civil or criminal action in federal court *in forma pauperis* by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit. *Neitzke*, 490 U.S. at 324, 109 S.Ct. 1827.

*Douris*, 293 F. App'x at 131–32.

---

[4] "The reference to prisoners in §1915(a)(1) appears to be a mistake. *In forma pauperis status* is afforded to all indigent persons, not just prisoners." *Douris v. Middletown Twp.*, 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

**B. Screening Complaints Under 28 U.S.C. §§1915A and 1915(e)(2)**

The Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). If such a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint. *See id.* §1915A(b)(1). The Court has a similar screening obligation regarding actions filed by individuals proceeding *in forma pauperis*. *See id.* §1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2)(B), the Court applies the standard governing motions to dismiss filed under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Smithson v. Koons*, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under §1915A(b)(1) [and] §1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), *report and recommendation adopted*, 2017 WL 3008559 (M.D. Pa. July 14, 2017); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section

1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)"). To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff. *See id.*; *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). However, the Court will not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2)(B). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of *pro se* litigation, the Court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (explaining that "when presented with a *pro se* litigant, we have a special obligation to construe [their] complaint liberally" (citation and internal quotation marks omitted)). Therefore, a *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle*, 429 U.S. at 106). Moreover, when construing a *pro se* complaint, the Court will "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). However, *pro se* litigants "cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

**C. Section 1983**

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. See 42 U.S.C. §1983. This statute states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

> thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution of laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002)). "To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

## III. DISCUSSION

### A. The IFP Application

After reviewing the IFP Application, it appears that Jefferies lacks the financial means to prepay the filing fee in this matter. Therefore, the Court will grant the IFP Application and allow Jefferies to proceed *in forma pauperis* in this action.[5]

[5] However, because Jefferies is a prisoner, he is advised that he will be obligated to pay the filing fees for this case in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of the outcome. *See* 28 U.S.C. §1915(b).

## B. Screening of Jefferies's Complaint

### 1. Failure to Comply with Federal Rule of Civil Procedure 10

Jefferies's complaint does not comply with Federal Rule of Civil Procedure 10 insofar as he fails to identify all Defendants in the caption of his complaint. *See* (Doc. 1 at 1). Instead, when naming the Defendants in the caption of his complaint, Jefferies uses the phrase, "et al." (*Id.*) The use of this Latin phrase, which means "[a]nd other persons," *Et al.*, BLACK'S LAW DICTIONARY (12th ed. 2024), in the caption of the complaint, is improper under Rule 10 because it requires that "[t]he title of the complaint must name ***all*** the parties." Fed. R. Civ. P. 10(a) (emphasis added); *see also Jeffers v. Lycoming Cnty. Prison*, No. 25-cv-2394, 2026 WL 657743, at *2 n.2 (M.D. Pa. Mar. 9, 2026) (explaining that *pro se* plaintiff's use of "et al." in caption of complaint was improper and determining that court would consider plaintiff's claims against only defendants plaintiff identified in the caption). Only "the title of other pleadings, after naming the first party on each side, may refer generally to other parties" by using phrases such as "et al." Fed. R. Civ. P. 10(a).

Here, because the only Defendant Jefferies identifies in the caption of his complaint is John Bey, he has not complied with Rule 10 to the extent that he seeks to assert claims against any other Defendants in this case.

Due to Jefferies's failure to comply with Rule 10, the Court could treat the complaint as asserting only claims against Bey. However, because Jefferies appears to name only three other Defendants in the body of his complaint, the Court will construe the complaint as containing claims against Bey, Briggs, Lewis, and Hoose. If Jefferies files an amended complaint in this case, he must identify all Defendants he seeks to assert claims against in the caption and body of any amended complaint.[6]

### 2. Section 1983 Official-Capacity Claims

Jefferies indicates that he asserts his Section 1983 claims against Defendants in their individual and official capacities. *See* (Doc. 1 at 1). As for his official-capacity claims, such claims against four Dauphin County employees are akin to suing Dauphin County itself. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 n.55 (1978). To assert a Section 1983 claim against a county by way of an official-capacity claim against a county employee, a plaintiff must identify a policy or custom fairly attributable to the municipality that caused their constitutional injury. *See id.* at 690–91. The plaintiff must also plausibly plead facts showing that each Defendant is a decisionmaker endowed with authority to promulgate or establish an official

[6] Jefferies appears to contemplate the need for him to file an amended complaint insofar as he requests, *inter alia*, a "new complaint form" in his complaint. See (Doc. 1 at 3).

custom or policy. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) (explaining that a decision to adopt a particular course of action made by the "government's authorized decisionmakers" represents an act of official government policy); *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (noting that plaintiff failed to "allege conduct by a municipal decisionmaker" in his attempt to assert municipal liability under Section 1983).

In this case, Jefferies does not allege any facts showing or reasonably inferring that either Adams or Hoose have decision-making authority to establish a custom or policy at the DCP. Moreover, even though it appears that Bey and Briggs could have such authority by virtue of their positions as Director of Corrections and Warden, respectively, Jefferies still fails to plead plausible official-capacity claims against them because he does not allege any facts identifying a policy promulgated by either Defendant.

It is possible that Jefferies attempts to assert his official-capacity claims based on an alleged lack of adequate training. *See* (Doc. 1 at 2 ("Upon information and belief, DCP correctional officers are inadequately training to deal with persons having a mental health crisis." (cleaned up))). Regarding claims for failure to train:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating

> citizens' rights may rise to the level of an official government policy for purposes of §1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) ("A 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*"). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the untrained employees come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under §1983." *Id.* at 389.
>
> "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Comm'rs of Byan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.* at 407. The city's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." *City of Canton*, 489 U.S., at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities . . . ." *Id.* at 392; *see also Pembaur*, 475 U.S. at 483 ("[M]unicipal liability under §1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . . .").

*Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) (cleaned up).

Here, Jefferies alleges in a conclusory manner that DCP correctional officers were not adequately trained to address inmates' mental health

crises. In other words, he fails to allege specific facts relative to his failure-to-train claim. He does not allege facts showing that Bey or Briggs had notice that any procedures were inadequate and likely to result in a violation of an inmate's constitutional rights. Rather, he simply expresses his belief that the DCP correctional officers were inadequately trained. Accordingly, the Court will dismiss Jefferies's Section 1983 official-capacity claims against Defendants for failure to state a claim for relief pursuant to Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).[7]

### 3. Request for Declaratory Judgment

Jefferies seeks a declaration that Defendants violated his rights. *See* (Doc. 1 at 3). The Court will dismiss this claim for relief because Jefferies cannot seek a declaration pertaining to past conduct by Defendants. Declaratory relief is "prospective in nature," *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013), and therefore cannot be applied to seek "retrospective relief." *Bond v. DiClaudio*, No. 22-3010, 2023 WL 1990532, at *1 (3d Cir. Feb. 14, 2023) (unpublished). Thus, because Jefferies seeks to

---

[7] Because the Court will dismiss Jefferies's Section 1983 official-capacity claims, the Court need not address his specific requests for relief relative to those claims. However, the Court notes that Jefferies may not seek punitive damages against Defendants in their official capacities. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. §1983.").

address actions by Defendants that have already occurred, he fails to state a plausible claim for declaratory relief in his complaint. *See, e.g.*, *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (unpublished) (explaining that a "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another"). Accordingly, the Court will dismiss Jefferies's claim for declaratory relief for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

**4. Claims for Violations of the Pennsylvania Constitution**

Jefferies claims that Defendants violated his rights under the Pennsylvania Constitution and seeks monetary damages for those violations. *See* (Doc. 1 at 3). However, there is no private right of action for monetary damages under the Pennsylvania Constitution. *See Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) (unpublished) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution."); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) (unpublished) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."); *Jones v. City of Philadelphia*, 890 A.2d 1188, 1208 (Pa. Commw. Ct. 2006) ("[N]either Pennsylvania statutory authority nor appellate case law has authorized the

award of money damages for violation of the Pennsylvania Constitution."). Therefore, the Court will dismiss Jefferies's claims for violations of the Pennsylvania Constitution for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 5. Claims for Excessive Force

The only claims in this case for which Jefferies clearly alleges supporting facts are excessive force claims against Lewis and Hoose. *See* (Doc. 1 at 2–3). Initially, the Court notes that Jefferies does not state whether he was a pretrial detainee or a convicted and sentenced prisoner while in the DCP on January 29, 2024, the date of the alleged use of excessive force. Jefferies's incarceration status is significant in this case because it affects whether the Eighth Amendment, which applies to individuals already convicted and sentenced, or the Fourteenth Amendment, which applies to pretrial detainees, governs his excessive-force claims. *See Hubbard v. Taylor*, 399 F.3d 150, 164 (3d Cir. 2005) ("*Hubbard I*") (explaining that the Eighth Amendment applies to individuals who have been convicted and sentenced); *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 n.4 (3d Cir. 2014) ("As a pretrial detainee, Thomas is not subject to the Eighth Amendment's protections; rather, the Fourteenth Amendment's Due Process Clause governs." (citing *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr.*,

372 F.3d 572, 579 (3d Cir. 2004))); *see also City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (explaining that the Eighth Amendment "has no application" until the government obtains a "formal adjudication of guilt," and that pretrial detainees' rights "are at least as great as the Eighth Amendment protections available to ... convicted prisoner[s]").

Even though Jefferies does not identify his incarceration status in his complaint, the publicly available docket entries for a criminal case Jefferies had in Dauphin County during the relevant period shows that he was still awaiting his criminal trial as of January 29, 2024. *See* Docket, *Commonwealth v. Jefferies*, No. CP-22-CR-2567-2021 (Dauphin Cnty. Ct. Com. Pl.).[8] It also shows that he was not convicted until April 15, 2024, and sentenced until July 14, 2024. *See id.* Therefore, presuming that Jefferies was incarcerated pursuant to his criminal charges in the aforementioned case at the time of the alleged events on January 29, 2024, he would have been incarcerated as a pretrial detainee, and the Fourteenth Amendment,

---

[8] The Court takes judicial notice of the entries on this criminal docket. *See Mickell v. Lycoming Cnty. Cent. Collections Off. & Admin.*, 821 F. App'x 74, 75 (3d Cir. 2020) (unpublished) (taking judicial notice of Court of Common Pleas criminal docket). These dockets are publicly accessible through the Unified Judicial System of Pennsylvania Web Portal (https://ujsportal.pacourts.us/CaseSearch). *See Zedonis v. Lynch*, 233 F. Supp. 3d 417, 422 (M.D. Pa. 2017) ("Pennsylvania's Unified Judicial System provides online access to the docket sheets for criminal cases, and this Court may take judicial notice of those public dockets." (citations omitted)).

not the Eighth Amendment, would apply to his excessive force claims. *See Wharton v. Danberg*, 854 F.3d 234, 247 (3d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). Accordingly, the Court will analyze Jefferies's excessive force claims under the Fourteenth Amendment.

Under the Fourteenth Amendment, pretrial detainees are entitled to at least as much protection from excessive force as prisoners who have already been convicted of a crime. *See Bistrian v. Levi*, 912 F.3d 79, 91 (3d Cir. 2018) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 188 n.10 (3d Cir. 1993)). However, unlike prisoners who have been convicted of a crime, who may not be subjected to cruel and unusual punishment, pretrial detainees "cannot be punished at all under the Due Process Clause." *Hubbard I*, 399 F.3d at 166 (citing *Bell*, 441 U.S. at 535). Thus, prison officials may not subject pretrial detainees to "excessive force that amounts to punishment." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194 (3d Cir. 2021) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

Unlike excessive force claims under the Eighth Amendment, which require plaintiffs to establish both an objective element and a subjective element to prove excessive force, excessive force claims under the Fourteenth Amendment are based exclusively on an objective-reasonableness standard. *See id.* (citing *Kingsley v. Hendrickson*, 576 U.S.

389, 396–400 (2015)). Therefore, a pretrial detainee seeking to establish that the use of force was excessive "must show only that the force purposely or knowingly used against [them] was objectively unreasonable." *Id.* (citing *Kingsley*, 576 U.S. at 396–97). A plaintiff can establish that the force used was excessive if they show that the force was "not 'rationally related to a legitimate nonpunitive governmental purpose'" or that the force used was "excessive in relation to that purpose." *Id.* (quoting *Bell*, 441 U.S. at 561).

There is no mechanical formula for determining when force is objectively unreasonable under the Fourteenth Amendment. *See Kingsley*, 576 U.S. at 397 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998)). Instead, the particular facts and circumstances of the case govern the inquiry, including, but not limited to:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.* (citing *Graham*, 490 U.S. at 396).[9] These facts and circumstances should be considered "from the perspective of a reasonable officer on the scene,

---

[9] The Supreme Court did "not consider this list to be exclusive." *Id.* Instead, the Court "mention[ed] these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force." *Id.*

including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* This consideration "adequately protects an officer who acts in good faith," insofar as it recognizes that "[r]unning a prison is an inordinately difficult undertaking, . . . and that safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Id.* at 399 (internal quotation marks and citations omitted). In addition, "a court must take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate." *Id.* at 399–400.

Applying the above standard for Fourteenth Amendment excessive force claims to Jefferies's allegations in his complaint, he fails to allege sufficient facts to state a plausible claim. Jefferies alleges that Lewis used a "palm thrust technique" to his forehead while he was strapped in a restraint chair and that Hoose stepped on his ankle in a "wanton fashion." (Doc. 1 at 2). However, Jefferies includes no other allegations describing the circumstances preceding these two instances of alleged force. As such, Jefferies's allegations are insufficient to show that the amount of force Lewis and Hoose allegedly used was objectively unreasonable. Accordingly, the

Court will dismiss Jefferies's Fourteenth Amendment excessive force claims against Lewis and Hoose for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

As for any excessive force claims against Bey and Briggs, Jefferies fails to plead excessive force claims against them because he does not allege any facts showing that they were personally involved in any use of force against him. For a plaintiff to plead a plausible Section 1983 claim against an individual defendant, they must sufficiently allege that defendant's personal involvement in the alleged constitutional violation. In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongdoing . . . ." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Jefferies's failure to allege any personal involvement by Bey and Briggs in the use of force is fatal to any excessive force claims against them.

The Court also notes that, considering that Jefferies does not allege that Bey and Briggs used any force against him, it is possible that he attempts to hold them liable simply because they are supervisory officials. If so, Jefferies's claims are implausible because liability under Section 1983 cannot be predicated on respondeat superior. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her §1983 claims on a respondeat superior basis." (emphasis omitted)

(citing *Rode*, 845 F.2d at 1207)); *Robinson v. Delbalso*, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his §1983 claims on a respondeat superior basis." (internal citations omitted)). Instead, if Jefferies seeks to hold Bey and Briggs liable for unconstitutional acts by their alleged subordinates, his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual defendants who are policymakers may be liable under §1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under §1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K.*, 372 F.3d at 586 (citation omitted); *see Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in Section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts

undertaken by subordinates"), *rev'd on other grounds sub nom.*, *Taylor v. Barkes*, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

*Chavarriaga*, 806 F.3d at 227 (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from

defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *Zigler v. Warren*, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor."). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Here, Jefferies's allegations do not satisfy the second theory of supervisory liability because there are no allegations that Bey and Briggs participated in violating his rights, directed Lewis or Hoose to violate them, or, despite knowing what was happening to Jefferies, acquiesced in any violation. In addition, as already explained, Jefferies's allegations do not satisfy the first theory of supervisory liability because he has not sufficiently alleged a policy, practice, or custom either Bey or Briggs established that led to the violation of his constitutional rights. Accordingly, the Court will also dismiss Jefferies's Section 1983 Fourteenth Amendment excessive force

claims against Bey and Briggs for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

**6. Deliberate Indifference Claims**

Jefferies asserts that Defendants acted with deliberate indifference. *See* (Doc. 1 at 3). However, it is unclear what type of claim he attempts to assert here. As such, the Court will dismiss these claims.

Deliberate indifference claims generally arise under the Eighth Amendment's Cruel and Unusual Punishments Clause, and such claims relate to a prisoner-plaintiff's allegation that a prison official consciously disregarded a substantial risk of harm to them. *See Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (explaining that deliberate indifference requires "obduracy and wantonness," such as "a conscious disregard of a serious risk" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986))). "There are several types of Eighth Amendment claims, including claims alleging: denial of, or inadequate access to, medical care; exposure to adverse conditions of confinement; the use of excessive force; and failure to protect from assaults by other inmates." *Smith v. McGinley*, No. 22-cv-1382, 2024 WL 2725041, at *4 (M.D. Pa. May 28, 2024), *aff'd*, No. 24-2173, 2024 WL 4589233 (3d Cir. Oct. 28, 2024). Pretrial detainees may raise similar claims, albeit potentially under different standards, pursuant to the Fourteenth Amendment. *See, e.g.*,

*Bell*, 441 U.S. at 538 (expressing requirements for pretrial detainees' conditions-of-confinement claims under the Fourteenth Amendment); *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 n.23 (3d Cir. 2023) ("Because the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment, we will review Sherelle Thomas's claims for failure to render medical care under the Fourteenth Amendment by applying the same standard used to evaluate claims brought under the Eighth Amendment."); *Stewart-Richardson v. Corr. Officer Yorks*, No. 25-cv-1646, 2026 WL 1760281, at *1 (M.D. Pa. June 18, 2026) (noting that "pretrial detainees' Fourteenth Amendment failure-to-intervene claims are evaluated under the same standards as convicted prisoners' Eighth Amendment claims" (citing *Gorrio v. Briggs*, No. 23-cv-1697, 2025 WL 2177826, at *26 (M.D. Pa. July 31, 2025))); *Carr v. Boran*, No. 24-cv-2192, 2025 WL 259384, at *3 (M.D. Pa. Jan. 21, 2025) ("Fourteenth Amendment failure to protect claims are governed by the same substantive standard as failure to protect claims asserted pursuant to the Eighth Amendment." (citing *Thomas*, 749 F.3d at 223 n.4)).

Here, although Jefferies alleges facts relating to the use of excessive force, he does not include any other allegations in his complaint that would

plausibly establish any other type of constitutional claim against any Defendant. For example, he does not allege any facts establishing that Defendants were deliberately indifferent to his serious medical needs. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (setting forth requirements for deliberate indifference to serious medical needs claims); *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993) (describing factual circumstances in which deliberate indifference could exist (citing *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987))). He also does not allege any facts relating to the conditions of his confinement other than his placement in a restraint chair; however, even then, he admits that he was suffering from a "mental health episode." (Doc. 1 at 2 (cleaned up)). Accordingly, as the Court cannot discern the factual basis for any Fourteenth Amendment claim other than an excessive force claim, the Court will dismiss the complaint to the extent that Jefferies seeks to assert deliberate indifference claims against Defendants for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

**7. Due Process Claims**

Jefferies also claims in his complaint that Defendants violated his due process rights. *See* (Doc. 1 at 3). Given that Jefferies's likely status as a pretrial detainee results in the application of the Fourteenth Amendment to

his excessive force claim, the Court construes his reference to "due process" as a Fourteenth Amendment procedural due process claim.[10] So construed, the Court will dismiss Jefferies's complaint to the extent he asserts such a claim.

Jefferies, as with all prisoners, is "not completely deprived of the protections of the Due Process Clause simply because [he is a] prisoner[]." *Id.*; *see also Sandin v. Conner*, 515 U.S. 472, 485 (1995) (explaining that although prisoners "do not shed all constitutional rights at the prison gate, lawful incarceration 'brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system'" (internal citation omitted) (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977))). Thus,

---

[10] The Fourteenth Amendment provides in pertinent part that: "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Cons. amend. XIV, §1. "The core concept of due process is protection against arbitrary government action [and, a]s that concept has developed, it has come to have both substantive and procedural components." *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011) (citing *Lewis*, 523 U.S. at 845). The substantive component "limits what government may do regardless of the fairness of procedures that it employs," *Boyanowski v. Cap. Area Intermediate Unit*, 215 F.3d 396, 399 (3d Cir. 2000), whereas the procedural component "governs the manner in which the government may infringe upon an individual's life, liberty, or property." *Evans*, 645 F.3d at 662. "Claims of excessive force of pretrial detainees are analyzed under substantive due process principles." *Dewald v. French*, No. 22-cv-317, 2022 WL 17669716, at *7 (M.D. Pa. Dec. 14, 2022) (citing *Graham*, 490 U.S. at 395 n.10).

"[p]rocedural protections must be afforded to [prisoners] before they are stripped of the rights they still retain while incarcerated." *Evans*, 645 F.3d at 662–63 (citation omitted).

There are two scenarios in which a prisoner holds a liberty interest triggering due process protections:

> (1) when "state statutes and regulations create a liberty interest in freedom from restraint that imposes an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," and (2) when "severe changes in conditions of confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing."

*Evans*, 645 F.3d at 663 (quoting *Renchenski v. Williams*, 622 F.3d 315, 325 (3d Cir. 2010)). These two scenarios are characterized as a "'so-called state-created liberty interest'" and a "'so-called independent due process liberty interest,'" respectively. *Id.* (quoting *Renchenski*, 622 F.3d at 325).

With respect to independent due process liberty interests, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon [them] and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Thus, an independent due process liberty interest arises only "when severe changes in conditions of

confinement amount to a grievous loss that should not be imposed without the opportunity for notice and an adequate hearing." *Renchenski*, 622 F.3d at 325. Examples of such severe changes in conditions of confinement include, *inter alia*, "forced administration of antipsychotic medication, *Washington v. Harper*, 494 U.S. 210, 221–22 (1990), or involuntary transfer to a mental hospital, *Vitek v. Jones*, 445 U.S. 480, 492 (1980), or, for a prisoner not convicted of a sex offense, forced participation in sex-offender therapy, *Renchenski*, 622 F.3d at 326." *Evans*, 645 F.3d at 665 (first two citations altered from original).

State-created liberty interests are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484 (internal citations omitted); *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (stating that, "[a]fter *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life'" (quoting *Sandin*, 515 U.S. at

484)); *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (explaining that, "in the conditions of confinement context," the liberty interest must be "substantial": "the right alleged must confer freedom from restraint which imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (internal quotations omitted)). A two-factor inquiry informs whether prison conditions impose "atypical and significant hardship": "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life." *Williams*, 848 F.3d at 560 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). Additionally, when determining whether a state-created liberty interest exists, courts are not to "compare the prisoner's own life before and after the deprivation." *Powell v. Weiss*, 757 F.3d 338, 344 (3d Cir. 2014). Instead, "[t]he baseline for determining what is atypical and significant—the ordinary incidents of prison life—is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." *Id.* (citations and internal quotation marks omitted).

Here, it does not appear that Jefferies expressly asserts a procedural due process claim in his complaint. He has not identified a protected liberty interest triggering due-process protections; instead, he challenges the

alleged excessive force used against him by Lewis and Hoose. Even if the Court presumed that the use of excessive force could give rise to a protectable liberty interest, Jefferies does not indicate in his complaint how he received constitutionally insufficient process relating to the events on or around January 29, 2024. *See, e.g.*, *Green v. Mergen*, No. 23-3037, 2025 WL 284628, at *4 (E.D. Pa. Jan. 23, 2025) ("Green brings this lawsuit to challenge the alleged excessive force used against him by Defendants and their deliberate indifference to his safety. Even assuming the use of excessive force or deliberate indifference could give rise to a liberty interest, Green nowhere challenges any lack of process in the events leading up to or following the events on May 24, 2022."). Therefore, to the extent that Jefferies attempts to assert procedural due process claims against Defendants in his complaint, the Court will dismiss these claims for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

**8. First Amendment Retaliation Claims**

Jefferies asserts that Defendants unlawfully retaliated against him in his complaint, *see* (Doc. 1 at 3), and the Court presumes that he attempts to plead a First Amendment retaliation claim. To plead a plausible First Amendment retaliation claim, Jefferies must allege that: "(1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of

prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline [them]." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). Here, Jefferies does not allege in his complaint that he engaged in any constitutionally protected conduct. As such, he fails to plead plausible First Amendment retaliation claims against Defendants, and the Court will dismiss these claims for failure to state a claim under Sections 1915(e)(2)(B)(ii) and 1915A(b)(1).

### C. Leave to Amend

Before dismissing all or part of a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); *Grayson v. Mayview St. Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) (stating general rule that court should grant leave to amend unless doing so would be futile). Here, the Court finds that it would be futile to grant Jefferies leave to file an amended complaint regarding (1) his request for declaratory

relief and (2) his claims for violations of the Pennsylvania Constitution. In all other respects, the Court does not find that it would be futile for Jefferies to attempt to amend his Section 1983 claims if he can allege sufficient facts to support those claims. As such, the Court will grant Jefferies leave to file an amended complaint as to his Section 1983 claims.

## IV. CONCLUSION

For the foregoing reasons, the Court will: (1) grant the IFP Application and allow Jefferies leave to proceed *in forma pauperis* in this case; (2) dismiss with prejudice Jefferies's claims for violations of the Pennsylvania Constitution and request for declaratory relief; (3) dismiss without prejudice Jefferies's Section 1983 claims for monetary relief against Defendants in their individual and official capacities; and (4) grant Jefferies leave to file an amended complaint should he seek to replead those Section 1983 claims that the Court will dismiss without prejudice. If Jefferies does not file an amended complaint, the Court will presume that he intends to stand on his complaint, *see Weber v. McGrogan*, 939 F.3d 232, 240 (3d Cir. 2019) (discussing stand-on-complaint doctrine), and the Court will issue an Order

directing the Clerk of Court to close this case without further notice to him. An appropriate Order follows.[11]

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 10/13/26
26-2435-01

[11] The Order will provide Jefferies with more information on the filing of an amended complaint.